COMMONWEALTH *vs.* E. GREGORY SEES.

Suffolk. December 6, 1977. — March 3, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Constitutional Law*, Freedom of speech, Alcoholic liquors, Public entertainment. *Alcoholic Liquors. Public Entertainment.*

A city ordinance prohibiting nude dancing on premises licensed to sell alcoholic beverages under G. L. c. 140, § 181 or § 183A, did not violate the First Amendment to the United States Constitution. [534-536]

Nude dancing by a female dancer for the entertainment of patrons on premises licensed to sell alcoholic beverages was protected expression under art. 16 of the Massachusetts Declaration of Rights, and a city ordinance prohibiting such conduct was, therefore, invalid as applied to the manager of an establishment who permitted such dancing. [536-538] KAPLAN, LIACOS, and ABRAMS, JJ., concurring. HENNESSEY, C.J., and QUIRICO, J., dissenting.

COMPLAINT received and sworn to in the District Court of Chelsea on July 3, 1974.

On appeal to the Superior Court, the case was heard by *Tuttle,* J., a District Court judge sitting under statutory authority.

The Supreme Judicial Court granted a request for direct appellate review.

*Kenneth H. Tatarian (Morris M. Goldings* with him) for the defendant

*Robert A. Long, Jr.,* Assistant District Attorney, for the Commonwealth.

BRAUCHER, J. The defendant was the manager of premises in Revere for a corporation which held an entertainment

license and an all alcoholic beverage license. He has been convicted of violation of a Revere ordinance because a female dancer performed on the dance floor wearing only a "G-string." In *Revere* v. *Aucella,* 369 Mass. 138, 140 (1975), appeal dismissed sub nom. *Charger Invs., Inc.* v. *Corbett,* 429 U.S. 877 (1976), we held that the ordinance "is not on its face inconsistent with our Constitution or laws," but we decided "no question as to the validity or application of the ordinance in any particular circumstances." We now hold that the application of the ordinance to the circumstances of this case abridges the right of free speech, contrary to art. 16 of the Declaration of Rights of the Massachusetts Constitution.

A complaint for "Violation City Ordinance Section 13-26," filed in the District Court of Chelsea on July 3, 1974, charged that on July 2 the defendant "did employ or permit any person to wit: Cindy Martini in or on the premises licensed under Ch 140 Sec 181 or 183A and or Ch 138 of the General Laws, while such person is unclothed or in such attire as to expose to view any portion of the areola of the female breast or any portion of the public [*sic*] hair, cleft of the buttocks or genitals." On conviction on July 11, the defendant appealed, and the case was tried de novo in the Superior Court without a jury on a statement of agreed facts, the defendant's motion to dismiss the complaint, and an evidentiary hearing on that motion. The judge issued his findings and order on December 6, 1976, denying the motion, finding the defendant guilty, and imposing a fine of $50. The defendant's bill of exceptions was assented to and allowed, and we allowed the defendant's application for direct appellate review.

The following facts appear in the bill of exceptions. Charger Investments, Inc. (Charger), held an entertainment license under G. L. c. 140, § 183A, and a common victualler's license and an all alcoholic beverage license under G. L. c. 138, and did business on the licensed premises in Revere, which were owned by the estate of Alfonso Aucella. The defendant was not a licensee but was an employee of

Charger and the manager, and on June 24, 1974, as manager, he applied for a license renewal. On July 2, 1974, Charger presented as entertainment individual female dancers accompanied by rock and roll music from phonograph records and a live band. There was no admission or cover charge, and patrons could leave at any time without charge other than for food or drink. A sign outside bore the word "Entertainers" and the silhouette of a "dancing girl." About 6:45 P.M. on July 2, police officers observed a female dancer, Cindy Martini, performing for one or two minutes on the dance floor wearing only a "G-string." She did not perform with or near any other dancer or come into contact with any other dancer or patron. The defendant was present as manager.

The complaint in the present case rests on § 13-26 (a)[1] of the same ordinance we considered in *Revere* v. *Aucella*, 369 Mass. 138 (1975), appeal dismissed sub nom. *Charger Invs., Inc.* v. *Corbett*, 429 U. S. 877 (1976). We there read that section as applying only to "licensed premises" subject both to a license for the sale of alcoholic beverages to be served and drunk on the licensed premises and to an entertainment license. "So read," we said, "the ordinance is not unconstitutional on its face." But, we thought, "we should not anticipate constitutional and other questions which may arise from particular applications of the ordinance." *Id.* at 146. We also held that the ordinance could not be enforced by injunction, vacated a judgment enjoining its enforcement, and ordered a new judgment declaring that the ordinance "is not invalid on its face, without prejudice to any question

---

[1] Revere Rev. Ords. c. 13, art. 3, § 13-26 (1972): "The following acts or conduct in or on premises licensed in accordance with Chapter 140, Sec. 181 or Sec. 183A are deemed contrary to the public need and to the common good and therefore no license shall be held for the sale of alcoholic beverages to be served and drunk on the licensed premises where such acts or conduct are permitted.

"(a) It is forbidden to employ or permit any person in or on the licensed premises while such person is unclothed or in such attire as to expose to view any portion of the areola of the female breast or any portion of the pubic hair, cleft of the buttocks, or genitals."

which may arise in a prosecution for a particular violation of the ordinance." *Id.* at 147.

The present defendant, who was not a party to the *Aucella* case, asks us to reconsider our holdings in that case, citing the dissenting opinion of two Justices. We decline the invitation. But we do consider the constitutional and other questions which arise from the particular application of the provisions of the ordinance to the defendant. We do not pass on "such questions as whether their possible application in one hypothetical case would render them overbroad and hence invalid in another hypothetical case, how far they are severable, or whether they are underinclusive so as to discriminate unfairly." *Boston Licensing Bd.* v. *Alcoholic Beverages Control Comm'n,* 367 Mass. 788, 794 (1975). Cf. *California* v. *LaRue,* 409 U.S. 109, 119 n.5. (1972).

We reject the defendant's argument that § 13-26 (a) is a mere declaration of policy rather than a prohibition of conduct. The defendant was the manager of "licensed premises"; there was evidence that he did "employ or permit" a person on those premises in such attire as to expose to view parts of her body mentioned in the ordinance. Thus he could be found to have done what was "forbidden." The ordinance does not require that the defendant himself be a licensee.

More serious is the claim that dance, though not literally "speech," is conduct designed to express ideas, that the governmental interest in its regulation is related to the suppression of free expression, and that the incidental restriction of First Amendment freedoms involved in this case is greater than is essential to the furtherance of that governmental interest. See *United States* v. *O'Brien,* 391 U.S. 367, 376-377 (1968). Before 1975 prohibition of topless or bottomless dancing in designated establishments was widely upheld as directed against conduct rather than speech. *Jones* v. *Birmingham,* 45 Ala. App. 86 (1969), cert. denied, 396 U.S. 1011 (1970). *Yauch* v. *State,* 109 Ariz. 576 (1973). *Robinson* v. *State,* 253 Ark. 882 (1973). *Crownover* v. *Musick,* 9 Cal. 3d 405 (1973), cert. denied sub nom. *Rey-*

*nolds* v. *Sacramento,* 415 U.S. 913, and sub nom. *Owen* v. *Musick,* 415 U.S. 931 (1974). *Hoffman* v. *Carson,* 250 So. 2d 891 (Fla.), appeal dismissed, 404 U.S. 981 (1971). *People* v. *Moreira,* 70 Misc. 2d 68 (N.Y. Dist. Ct. 1972). *Portland* v. *Derrington,* 253 Or. 289, cert. denied, 396 U.S. 901 (1969). *Wayside Restaurant, Inc.* v. *Virginia Beach,* 215 Va. 231 (1974). *Seattle* v. *Marshall,* 83 Wash. 2d 665, cert. denied, 419 U.S. 1023 (1974). *State* v. *Maker,* 48 Wis. 2d 612 (1970), cert. denied, 401 U.S. 1013 (1971). See Annot., 49 A.L.R.3d 1084, 1094 (1973). But it now seems clear that such ordinances violate the First Amendment if not limited to places dispensing alcoholic beverages. *Doran* v. *Salem Inn, Inc.,* 422 U.S. 922, 932-934 (1975). *Salem Inn, Inc.* v. *Frank,* 522 F.2d 1045, 1048-1050 (2d Cir. 1975). *Starshock, Inc.* v. *Shusted,* 493 F.2d 1401 (3d Cir.), rev'g 370 F. Supp. 506 (D.N.J. 1974). *Saxe* v. *Brennan,* 416 F. Supp. 892, 894-895 (E.D. Wis.), aff'd, 544 F.2d 521 (7th Cir. 1976). *Attwood* v. *Purcell,* 402 F. Supp. 231, 236 (D. Ariz. 1975). *Koppinger* v. *Fairmont,* 311 Minn. 186, 199 (1976). *People* v. *Nixon,* 88 Misc. 2d 913 (N.Y. App. Term 1976).

The present ordinance, however, is so limited. As matter of Federal law "the broad powers of the States to regulate the sale of liquor, conferred by the Twenty-first Amendment," outweigh "any First Amendment interest in nude dancing" and a State can therefore "ban such dancing as a part of its liquor license program." *Doran* v. *Salem Inn, Inc., supra* at 932-933. See *Scott* v. *Department of Alcoholic Beverage Control,* 434 U.S. 1003 (1978). As we held in the *Aucella* case, the power of the State may be exercised by the city through an ordinance unless inconsistent with the Constitution or laws enacted by the General Court, and the present ordinance is not inconsistent with laws enacted by the General Court. 369 Mass. at 143-146.

There remains for consideration the free speech provision of art. 16 of our Declaration of Rights:[2] "The right of free

---

[2] As amended by art. 77 of the Amendments to the Massachusetts Constitution.

speech shall not be abridged." That provision on its face draws no distinction between free speech in a bar and free speech on a stage, and no provision of our Constitution gives a preferred position to regulation of alcoholic beverages. So far as the record before us discloses, the dancer may have been rendering a selection from the "Ballet Africains" or some other work of unquestionable artistic and socially redeeming significance. See *Doran* v. *Salem Inn, Inc.*, 422 U.S. 922, 933 (1975). Though not shown by proof, it seems more likely that she was engaged in "the customary 'barroom' type of nude dancing," involving "only the barest minimum of protected expression." *Id.* at 932. To distinguish between the two, however, would be to cast on the police and courts "the anomalous duty of serving as . . . artistic constables," evaluating the artistic worth and tasteful quality of the performance in its total context. *Commonwealth* v. *Horton*, 365 Mass. 164, 178 (1974) (Kaplan, J., concurring). No governmental interest is shown to warrant the effort. See *California* v. *LaRue*, 409 U.S. 109, 130-133 (1972) (Marshall, J., dissenting). Moreover, the artistic preferences and prurient interests of the vulgar are entitled to no less protection than those of the exquisite and sensitive esthete. See *Salem Inn, Inc.* v. *Frank*, 522 F.2d 1045, 1048-1049 (2d Cir. 1975).

The activity here in question was protected expression under art. 16 and the ordinance is therefore invalid as applied. The regulation of nudity on licensed premises, we have held, is not unconstitutional on its face. But we are not here concerned with a topless waitress. See *California* v. *LaRue*, 409 U.S. 109, 112 n.2 (1972). Nor with the imposition of nudity on an unsuspecting or unwilling person. See *Revere* v. *Aucella*, 369 Mass. 138, 142-143 (1975), appeal dismissed sub nom. *Charger Invs., Inc.* v. *Corbett*, 429 U.S. 877 (1976). The defendant employed or permitted a female dancer to perform to music on a dance floor for the entertainment of patrons. She did not mingle with other employees or with patrons, and there is no contention that the performance was obscene. Contrast *Aristocratic Restaurant of*

*Mass., Inc.* v. *Alcoholic Beverages Control Comm'n (No. 1), post* 547 (1978); *Aristocratic Restaurant of Mass., Inc.* v. *Alcoholic Beverages Control Comm'n (No. 2), post* 564 (1978). Whatever the artistic merit of her performance, we do not think it could constitutionally be suppressed.

We are somewhat troubled by the thought that some such performances may be demeaning to the employees who perform and to others like them. But no argument on these lines seems to have entered into the process of enactment of the ordinance, and no such argument is presented to us. We leave the point to another day.

As applied to the defendant, the ordinance violates art. 16.

*Exceptions sustained.*


KAPLAN and LIACOS, JJ., adhere to the views previously expressed in the dissent of Kaplan, J. (with Chief Justice Tauro agreeing), in *Revere* v. *Aucella,* 369 Mass. 138, 148 (1975), appeal dismissed sub nom. *Charger Invs., Inc.* v. *Corbett,* 429 U.S. 877 (1976): (1) the ordinance is beyond the authority of the city council because it intrudes on the jurisdiction vested by the Legislature in the administrators of the alcoholic beverages control law (G. L. c. 138); (2) the ordinance is unconstitutional on its face as offensive to our Declaration of Rights. Being unable to persuade a majority of the court of either proposition, they concur in the present judgment on the narrow ground that the ordinance is unconstitutional in its application.

ABRAMS, J., agrees with the first basis of the *Aucella* dissent, reserves opinion on the second, and concurs in the judgment on the ground that the ordinance is unconstitutional in its application.

HENNESSEY, C.J. I dissent. If the ordinance at issue here applied to other than drinking establishments, it would clearly be unconstitutional on its face as an impermissible restriction on expression in the performing arts. However,

this ordinance applies only to places where alcoholic beverages are sold to be consumed on the premises. The Supreme Court of the United States has held that a State has the power to prohibit nude dancing as a part of its liquor license program. *Doran* v. *Salem Inn, Inc.*, 422 U.S. 922, 932-933 (1975). After more than four decades of public regulation in this Commonwealth of the distribution of alcohol, I do not believe that we should apply the First Amendment more broadly in this narrow regulatory area than the Supreme Court chose to do; nor should we apply provisions of our State Constitution similarly to limit State control.

Drinking establishments, and the areas where they are permitted, may present special and serious problems to the community. Local and State regulation, provided it is not irrational or invidiously discriminatory, should be permitted to meet those special problems. The implications of the majority's position in this case are disturbing. Dancing is presently prohibited altogether as a condition of licenses in some instances. Some licensed drinking establishments are now denied entertainment licenses. How does the reasoning of the majority opinion affect these local options? When we prohibit all entertainment, we are suppressing expression, including the spoken word. Clearly, the community can deny or limit entertainment privileges on reasons based on consideration of time, place, and circumstances. However, the licensed drinking establishment which demands entertainment privileges may well have met all reasonable conditions as to safety, health, traffic, and the like.

The point is that, by the majority holding here, we are limiting the options for reasonable regulation. The community may rationally conclude that nude dancing in drinking places encourages other conduct of a criminal nature. The records in recent appealed cases can be said to lend support to that reasoning. Yet I think the logic of the majority position here leads to the contention that regulation must be limited to a denial of all entertainment privileges, or even leads to the proposition I have suggested above, that regula-

tion may be achieved only by the prohibition of drinking licenses.

I have stated in the past that it is constitutionally required that the State must tolerate even "[v]ulgar, profane, offensive" speech. *Commonwealth* v. *A Juvenile,* 368 Mass. 580, 589-590 (1975). This tolerance requires protection against the barest possibilities of suppression arising from vagueness or overbreadth in regulations. But since the ordinance at issue here applies only to nude dancing and only in drinking establishments, I see in it no threat to freedom of expression. Neither the "Ballet Africains" nor presentations of lesser artistic distinction are truly threatened. The majority opinion strikes down a reasonable regulation of drinking establishments because of a threat to free expression which is theoretical rather than actual. Since the threat to free expression is nonexistent, there is a touch of intellectual masochism in denying to the community this moderate exercise of its judgment in the control of its "adult entertainment" areas.

QUIRICO, J. (dissenting). In *Revere* v. *Aucella,* 369 Mass. 138 (1975), appeal dismissed sub nom. *Charger Invs., Inc.* v. *Corbett,* 429 U.S. 877 (1976), we had before us the question of the validity of an ordinance of the city of Revere regulating the types of entertainment permitted at places licensed for the sale of alcoholic beverages to be consumed on the premises. The ordinance prohibited nude dancing of the type involved in this case. We concluded that "[t]he ordinance . . . is within the powers granted to the city . . . and is not on its face inconsistent with our Constitution or laws." *Id.* at 139- 140. The defendant in the case now before us has been found guilty of violating this same ordinance by employing or permitting a nearly nude entertainer to dance on premises licensed both as a common victualler and for the sale of alcoholic beverages to be consumed thereon. This court is now reversing that conviction on the ground that the "activity here in question was protected expression under art. 16 [of the Declaration of Rights] and the ordinance is therefore invalid as applied." [1]

---

[1] The pertinent language of art. 16 is: "The right of free speech shall not be abridged."

I dissent from the decision of the court in this case, both for the reasons stated by the Chief Justice in his dissenting opinion and for the reasons stated below.

It appears that in some circumstances a performance by a nude dancer is protected by art. 16 as a form of "speech." See *Doran* v. *Salem Inn, Inc.*, 422 U.S. 922, 932-934 (1975). I do not believe, however, that the necessary circumstances are present in this case. The mere fact that an act, conduct, or performance qualifies as "speech" under art. 16, or under the First Amendment to the Constitution of the United States,[2] does not place it beyond reasonable regulation for any and all purposes and in all circumstances. In *United States* v. *O'Brien*, 391 U.S. 367 (1968), the defendant argued that "his act of burning his [draft] registration certificate was protected 'symbolic speech' within the First Amendment." *Id.* at 376. The Court made the assumption that there was a sufficient communicative element in O'Brien's conduct to bring it within the First Amendment, but went on to hold that "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. . . . [W]e think it clear that a government regulation is sufficently justified [a] if it is within the constitutional power of the Government; [b] if it furthers an important or substantial governmental interest; [c] if the governmental interest is unrelated to the suppression of free expression; and [d] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Id.* at 376-377.

In my opinion, the application to the present case of the four part test prescribed by the *O'Brien* decision requires the conclusion that the Revere ordinance, as applied and enforced here, does not unconstitutionally interfere with or otherwise violate either the defendant's or the performer's

[2]The pertinent language of the First Amendment is: "Congress shall make no law . . . abridging the freedom of speech . . . ."

right of "free speech" under art. 16 or "freedom of speech" under the First Amendment.

(a) There can certainly be no question at this late date that the regulation of the alcoholic beverage industry is within the constitutional power of the Commonwealth. "The liquor traffic has long been recognized as a source of danger to the public welfare, health and safety, and regulations governing the conduct of the business and frequently going to the extent of prohibiting it altogether have been sustained. . . . [Citations omitted.] The power of the State to protect itself by an exercise of the police power is commensurate with the nature of the evil which it seeks to eliminate." *Supreme Malt Prods. Co.* v. *Alcoholic Beverages Control Comm'n,* 334 Mass. 59, 61-62 (1956). "The powers of the States in dealing with the regulation of the sale of intoxicating liquors are very broad. What they may wholly prohibit, they may permit only on terms and conditions prescribed by the Legislature. . . . [Citations omitted.] In dealing with a trade, which, because of its great potential evils, can be wholly prohibited, a wide power is given to the Legislature with respect to the delegation of discretionary powers." *Connolly* v. *Alcoholic Beverages Control Comm'n,* 334 Mass. 613, 619 (1956). Indeed, as noted at the beginning of this dissenting opinion, this court held in *Revere* v. *Aucella, supra* at 143-146, that powers delegated by the Commonwealth to the city of Revere included the power to enact the very same ordinance involved here.

(b) The next consideration is whether the ordinance, limited for the purposes of this case to the prohibition of nude dancing at establishments licensed for the sale of alcoholic beverages to be consumed on the premises, "furthers an important or substantial governmental interest." *United States* v. *O'Brien, supra* at 377. The government has an important and substantial interest in preserving the public safety and preventing the commission of criminal acts, and it is unquestioned that the regulation of the sale of intoxicating liquors is a proper means for accomplishing this purpose. See *Aristocratic Restaurant of Mass., Inc.* v. *Alcoholic Bever-*

*ages Control Comm'n (No.1), post* 547, 553 (1978). The additional question here is whether the protection of the public safety is furthered by the prohibition of nude dancing in establishments that are licensed to serve liquor. I believe that the proper municipal authorities of Revere could and did conclude that it is.

The Chief Justice has noted in his dissenting opinion that "[t]he community may rationally conclude that nude dancing in drinking places encourages other conduct of a criminal nature. The records in recent appealed cases can be said to lend support to that reasoning." In *California* v. *LaRue,* 409 U.S. 109, 111 (1972), the United States Supreme Court noted that "in licensed establishments where 'topless' and 'bottomless' dancers, nude entertainers, and films displaying sexual acts were shown, numerous incidents of legitimate concern to the . . . [State] had occurred." The Court went on to list a number of criminal activities that took place on or around these premises. *Id.* It is my opinion that the municipal authorities, in exercising their legislative or administrative power to regulate the liquor business, may rely on their common knowledge of these conditions which probably, and perhaps inevitably, follow in the wake of the concurrence of the service of alcoholic beverages and entertainment of the kind prohibited by the Revere ordinance. There is a sufficient history of the cause and effect in such circumstances to provide a rational basis for the exercise of the legislative power to protect against the consequences.

(c) I further conclude that the governmental interest in this case is not related to the suppression of free expression. Nude dancing in licensed establishments is not prohibited "because the communication allegedly integral to the conduct is itself thought to be harmful," *O'Brien, supra* at 382, but rather to prevent the evils that result from the presentation of this type of entertainment in establishments serving liquor. The message communicated by the dancers is not relevant; indeed, if activity that was unrelated to sex resulted in the same criminal abuses when accompanied by liquor sales, it too could be regulated. No restriction exists to the

dancers' communicating their message at some place other than a licensed establishment.

(d) In view of the evil at which the ordinance is directed, I believe that the limitation of its application to places licensed to sell alcoholic beverages to be consumed on the premises satisfied the requirement that "the incidental restriction on alleged [art. 16 or] First Amendment freedoms is no greater than is essential to the furtherance of that interest." *United States* v. *O'Brien, supra* at 377. This ordinance leaves Cindy Martini free to exercise her right of free speech, whether by dancing in the nude or otherwise, at any place in the city of Revere except where alcoholic beverages are sold and served, and it leaves the defendant free to employ or permit her to do so in those places. In my opinion this incidental restriction on the right of free speech, whether Cindy Martini's or the defendant's, cannot be held to be greater than reasonably necessary when viewed in balance with the city's interest in regulating the alcoholic beverage business, and protecting its citizenry, within its borders. The ordinance is "generally necessary to protect one or more of the legitimate governmental interests," and is therefore not overly broad. *Procunier* v. *Martinez,* 416 U.S. 396, 414 (1974).

A similar application of the *O'Brien* test has been made by the California Supreme Court in *Crownover* v. *Musick,* 9 Cal. 3d 405 (1973), cert. denied sub nom. *Reynolds* v. *Sacramento,* and sub nom. *Owen* v. *Musick,* 415 U.S. 931 (1974), to uphold local ordinances against contentions that they facially violated free speech guaranties. The local ordinances prohibited nudity "while participating in any 'live act, demonstration or exhibition' in any public place or by entertainers in establishments serving food or beverages, excepting in all instances theaters and similar establishments." *Id.* at 424. For the purpose of the case the court assumed that the entertainment prohibited possessed a significant enough "communicative element" to bring the First Amendment into play. *Id.* at 423-427. It nevertheless upheld the ordinances on the basis of the *O'Brien* analysis. *Id.*

at 427-428. The court held: "The ordinances proscribe no more than is necessary to ban the nudity which has been deemed harmful to public welfare or morals. We are satisfied therefore that . . . the ordinances before us meet all of the four requirements set down by the Supreme Court in the *O'Brien* case." *Id.* at 428.[3]

In addition to my belief that the ordinance as applied here is valid under the test of the *O'Brien* case, I also question the court's interpretation of, and reliance on, the cases of *California* v. *LaRue*, 409 U.S. 109 (1972), and *Doran* v. *Salem Inn, Inc.*, 422 U.S. 922 (1975). The court, it appears, reads the *LaRue* case as holding that, but for the Twenty-first Amendment, the prohibition of nude dancing in licensed establishments would violate the free speech guaranty of the First Amendment. It reasons that the scope of the coverage of the First Amendment is generally the same as that of art. 16 of the Declaration of Rights, and then argues that in this case there is "no provision of our Constitution [that] gives a preferred position to regulation of alcoholic beverages" so as to limit the scope of art. 16 in a way comparable to the supposed limitation on the First Amendment. Therefore, the court holds that art. 16 prevents the prohibition of nude dancing even in licensed establishments.

It is my opinion, however, that the reading of the *LaRue* case supporting such an analysis is unnecessarily narrow. I find no language in the *LaRue* opinion itself that requires the conclusion that the Twenty-first Amendment is a sine qua non for upholding regulations of the type in question here. Dictum in the later *Doran* case does indeed tend to support such an interpretation as noted by this court in the present case. However, the still more recent case of *Craig* v. *Boren*, 429 U.S. 190 (1976), undermines this view. In *Craig* the Court relegates the Twenty-first Amendment to its historical position as "an exception to the normal operation of

---

[3] For a similar treatment of the test of the *O'Brien* case see the opinion of the three-judge court in *Kew* v. *Senter*, 416 F. Supp. 1101, 1105 (N.D. Tex. 1976).

the Commerce Clause. . . . Once passing beyond consideration of the Commerce Clause, the relevance of the Twenty-first Amendment to other constitutional provisions becomes increasingly doubtful." *Id.* at 206. It is therefore possible and perhaps probable that the Supreme Court would have upheld the regulations attacked in *LaRue* on the basis of the First Amendment even if the Twenty-first Amendment argument were not available to it. This view is supported by the decisions of other States, issued since the *LaRue* decision, that have upheld similar regulations in the face of challenges based expressly on free speech provisions of their own State Constitutions. See *Crownover* v. *Musick, supra* at 418; *Cheetah Enterprises, Inc.* v. *County of Lake,* 22 Ill. App. 3d 306 (1974).[4] I therefore believe that this court should also uphold the prohibition of nude dancing in licensed establishments against attacks grounded in art. 16.

I would not interpret or apply art. 16 as affording Cindy Martini or the defendant any greater right, or as affording the citizens of Revere any lesser right, than they would have under the First Amendment as construed by the United States Supreme Court in *United States* v. *O'Brien, supra.* Whether the city of Revere has taken note of the consequences in other communities of the mixing of alcoholic beverages and the kind of "free speech" claimed for the entertainer in this case, and wants no part of it, or has itself experienced some unhappy consequences of such mixing and wants no more of it, I do not believe that it is rendered impotent to protect itself therefrom under any reasonable interpretation and application of art. 16 or the First Amendment. In my view neither of these constitutional provisions compels any municipality to tolerate, suffer or permit a

---

[4]Many States have upheld prohibitions of nude entertainment without expressly discussing the free speech provisions of their own State Constitutions. See *Yauch* v. *State,* 109 Ariz. 576 (1973) (en banc) (Art. 2, § 6); *Wright* v. *Huxley,* 249 N.W.2d 672 (Iowa 1977) (Art. 1, § 7); *Midtown Palace, Inc.* v. *Omaha,* 193 Neb. 785 (1975) (Art. 1, § 5); *Salem* v. *Liquor Control Comm'n,* 34 Ohio St. 2d 244 (1973) (Art. 1, § 11); *Seattle* v. *Hinkley,* 83 Wash. 2d 205 (1973) (en banc) (Art. 1, § 5).

374 Mass. 547                                    547

Aristocratic Restaurant etc. v. Alcoholic Bev. Control Comm'n (No. 1).

local counterpart of Boston's "adult entertainment district," also commonly referred to as the "combat zone," to operate within its borders.

In the circumstances of this case I do not believe that it is unconstitutional for the city of Revere to say to persons within its borders, that, if they want to drink alcoholic beverages and also to see or hear the conduct which is proscribed by the ordinance in question, they must do each in a different place.